**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JAMES G. BOFINGER,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **5:06-CV-108 (HL)** |
| | : | |
| **CYNTHIA NELSON and the** | : | |
| **GEORGIA BOARD OF PARDONS** | : | |
| **AND PAROLES,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

Before the Court is Respondent's second Motion to Dismiss (Doc. 18) Petitioner's habeas petition. The Magistrate Judge has submitted a Report and Recommendation, (Doc. 35), and Petitioner has entered his objections in response (Doc. 37). After careful consideration of the record, the Court adopts the Report and Recommendation in part, and grants in part and denies in part the Motion to Dismiss.

## I. BACKGROUND

The procedural history of this case is somewhat unusual. Bofinger pled guilty on November 14, 1968 to murder and larceny, and received a sentence of life plus five years. He was paroled in February 1997, and subsequently absconded from supervision. Authorities arrested Bofinger in May 1998 and he was taken back into

custody. In November 1998 he was denied parole.

According to Bofinger, he discovered evidence in October 20, 2002, that the parole board's decisionmaking process had been in violation of Georgia law for eleven years. In 2003, he filed a state mandamus action challenging the 1998 denial of parole based on this new evidence. That action remained pending until it was dismissed on July 14, 2007.

On April 4, 2006, while Bofinger was awaiting resolution of his state mandamus action, he filed the present habeas petition in federal court. Respondent moved to dismiss for failure to exhaust remedies. Bofinger claimed, however, that his state mandamus had been pending for three years, and the Magistrate Judge therefore recommended that the Motion to Dismiss be denied due to the state court's delay in adjudicating the mandamus action. This Court adopted that Recommendation.

## II. DISCUSSION

### A. Federalism Concerns

The February 15, 2008 Report and Recommendation currently before the Court notes that as of April 4, 2006, the time of Petitioner's filing of his federal habeas action, he had not exhausted state remedies. However, as the Magistrate Judge correctly concluded, the state court's July 14, 2007 denial of Bofinger's

mandamus action mooted the issue of exhaustion of state remedies.[1]  See 28 U.S.C.

§ 2254(b)(1) (prohibiting *granting* of the application for writ of habeas corpus until

state remedies have been exhausted, but remaining silent with regard to actions *filed*

before state remedies have been exhausted).  That court nonetheless recommended

dismissal because "it would be adverse to the principles of federalism if petitioner

were permitted to file a federal habeas corpus petition before his state remedies had

been either exhausted or proved futile." Doc. 35 at 2.

"The exhaustion requirement is grounded in principles of comity and reflects

a desire to protect the state courts' role in addressing alleged violations of state

prisoners' federal rights."  Maulk v. Lanier, 484 F.3d 1352, 1357 (11th Cir. 2007).

In the present case, by ruling on state mandamus action, Georgia has been afforded

the opportunity to pass on the issue of whether Petitioner's rights have been

violated.  The principles of comity and federalism that the exhaustion doctrine serves

have therefore been satisfied under the facts of this case.

Allowing prisoners with pending state proceedings to file their federal habeas

petitions before those state proceedings have been concluded could pose other

problems, however.  The goal of judicial economy would be defeated if prisoners

were permitted to clog the federal system with habeas petitions that are likely to be

---

[1]The Court notes that it takes no position on whether Petitioner was required to appeal the mandamus ruling or whether he has raised the issues he presents before this court in the state court proceeding.  These are arguments that Respondents have not raised and the Parties have not briefed.

denied for failure to exhaust or with cases that might be resolved in the state system. In this case, however, Petitioner only filed his federal habeas petition after the state proceedings had continued for three years and after eight months of inaction in the state system. His premature filing was the result of the belief that the state remedy had proven effectively unavailable; it was not a wasteful and impatient attempt to gain early access to the federal system. Furthermore, dismissing Petitioner's habeas petition will not further the interest of judicial economy because his remedy will be simply to re-file, and the lengthy process of developing the record would begin anew. The Court therefore respectfully declines to dismiss the habeas petition on the ground recommended by the Magistrate Judge, and turns to the issue of untimeliness.

**B. Untimeliness**

Under federal law, there is a one-year period of limitation for all federal habeas corpus applications brought by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). That time period begins to run on the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual

4

> predicate of the claim or claims presented could have
> been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Respondent argues that the period began to run in 1998 when Petitioner's unfavorable parole determination was made. Petitioner argues instead that this case falls within § 2244(d)(1)(D), and as such the limitations period did not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). The newly discovered evidence that he references is an article printed in the October 20, 2002 edition of the Atlanta Journal Constitution, which allegedly alerted him of the factual predicate for his claim. The running of the limitations period would, therefore, have begun on October 20, 2002, until it was tolled again by Petitioner's filing of his state mandamus on September 17, 2003. Under this theory, when Bofinger filed his federal habeas petition on April 4, 2006, the statute of limitations was still being tolled by the state action and the petition was therefore timely filed.

Bofinger makes the following challenges to his denial of parole: the parole board's treatment of him after he was reincarcerated amounted to an increase in his punishment or alteration of the underlying offense in violation of the Ex Post Facto Clause and constitutional substantive due process protections, and the parole board treated him differently than other similarly situated persons in violation of the Equal Protection Clause. (Doc. 1). The newspaper article at issue reports that members

of the parole board had granted release to prisoners by a vote of a single member of the board, as opposed to the three-member majority required by Georgia law. Bofinger's amendment to his habeas petition states that the revelation that the parole board was improperly granting parole allows the inference that it was also improperly denying parole.

Affording Petitioner considerable latitude in construing his habeas petition, the Court finds that this article provided a factual predicate for his equal protection challenge, in which Bofinger claims that he was treated differently than other similarly situated inmates. If the parole board improperly handled Petitioner's parole determination, and if that impropriety amounted to a denial of equal protection under the law, then the newspaper article would have been the first opportunity for Bofinger to discover the factual predicate for this constitutional challenge. Although the Court has doubts about the merits of such a claim, it nonetheless survives the timeliness requirements. The article does not, however, reveal information that establishes a factual predicate for his ex post facto arguments. Any argument that the parole board's decision increased his punishment would have been known to Petitioner at the time the decision was made; the parole board's decisionmaking process would not change the analysis under the Ex Post Facto Clause.

## III. CONCLUSION

Respondent's Motion to Dismiss is granted with respect to Petitioner's ex post facto and substantive due process grounds in his habeas petition, but denied with

regard to the equal protection ground.

**SO ORDERED**, this the19th day of March, 2008.

_s/   Hugh Lawson_

**HUGH LAWSON, Judge**

tch